UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE COLEY, | ) | Case No. 3:05 CV 0121 |
| | ) | |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| KHELLEH KONTEH, WARDEN, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Eugene Coley is a prisoner in state custody who pursuant to 28 U.S.C. §2254 is seeking habeas corpus relief from his Lucas County convictions for aggravated robbery, theft and carrying a concealed weapon. Coley challenges these convictions raising the following sole ground for habeas corpus relief:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. COLEY WHERE IT DIRECTED HIM TO HOLD A WEAPON DURING THE TRIAL AS THE DANGER OF UNFAIR PREJUDICE SUBSTANTIALLY OUTWEIGHED THE PROBATIVE VALUE OF THE ACT, THUS VIOLATING MR. COLEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION (TR. at 335-39).

*Procedural Default:*

Respondent argues that federal review is barred due to a procedural default arising from the Ohio Supreme Court's rejection of Coley's delayed appeal, relying on *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2000), *cert. denied*, 543 U.S. 989 (2004) and Ohio S.Ct. Prac. R. II §2(A)(4)(a). See *State v. Coley*, 103 Ohio St.3d 1460, 815 N.E.2d 667 (Table 2004). However, the procedural

3:05 CV 0121 2

history is a bit more involved than as related by respondent, and Coley has "cause" to excuse the procedural default.

*"Cause and Prejudice:"*

The failure to appeal to the Ohio Supreme Court on the grounds raised in the federal habeas corpus petition constitutes a procedural bar (waiver) to federal relief on that ground absent a showing of "cause" and "prejudice" for the failure. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Cohen v. Tate*, 779 F.2d 1181, 1185 (6th Cir. 1985); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir. 1985), *cert. denied* 474 U.S. 831 (1985); *Engle v. Isaac*, 456 U.S. 107, 113-14, 117, 124-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Teague v. Lane*, 489 U.S. 288, 298-99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Generally, there must be a decision from the state court asserting procedural default. However, no such statement is necessary if the claim was not presented to the state's highest court. See *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

Under the state procedural mechanism, the Ohio Supreme Court has jurisdiction over timely appeals which are exercised within 45 days of entry of the state appellate court's decision. See Ohio S.Ct Prac.R. II §2(A)(1). The Ohio Supreme Court may, however, in its discretion take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to S.Ct.R. II §2(A)(4)(a). The Sixth Circuit held in *Bonilla v. Hurley* that the unexplained state court decision denying leave to file an untimely appeal to the Ohio Supreme Court is assumed to enforce any applicable procedural bar, and as a result, denial of an Ohio S.Ct. Prac. R. II §2(A)(4)(a) motion for leave to file delayed appeal is not a ruling on any claim included with the motion for leave. See *Bonilla*, 370 F.3d at 497; *Smith v. State of Ohio Dept. of Rehab and Corr.*, 463 F.3d 426, 431-32 (6th

3:05 CV 0121                                                   3

Cir. 2006). Consequently, an untimely appeal to the Ohio Supreme Court is a procedural ruling, which is both actually enforced and is an adequate and independent state ground on which the state can foreclose federal habeas review consistent with *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). See *Smith v. State of Ohio, Dept. of Rehabilitation and Correction*, 463 F.3d 426, 431-32 (6th Cir. 2006); and see *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). "When a 'state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman* at 750; *Bonilla* at 497.

A demonstration of "cause" and "prejudice" may excuse the default from a failure to present a constitutional claim to the state's highest court, or alternatively a fundamental miscarriage of justice resulting in the conviction of one who is actually innocent. See *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 102 S.Ct. 1587, 1590-92, 146 L.Ed.2d 518 (2000); *House v. Bell*, -U.S.-, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971). "Cause" is some "objective factor external to the defense" which impeded petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 492, 106 S.Ct. 2635, 2645-48, 91 L.Ed.2d 397 (1986). "Prejudice" must be "actual prejudice" as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 2546 (1991); *Bousley v. U.S.*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Murray* v. *Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646.

3:05 CV 0121                                                      4

The state appellate court denied Coley's direct appeal on May 28, 2004.  See *State v. Coley*, 2004 WL 1191100, 2004 - Ohio - 2776 (Ohio App. 6 Dist.); (Respondent's Ex. 14) (not May 24, 2004 as related in the brief) (Answer, p. 3)).  Forty-five days from this date computes to Sunday, July 12, 2004.  The Clerk of the Supreme Court of Ohio dated the rejection letter Monday, July 13, 2004. (Resp. Ex. 15). July 13, 2004, does compute to the 46th day from the filing date of the appellate court's decision.  However, Coley's affidavit with supporting exhibits establishes that he submitted his legal papers and postage authorization well in advance of the filing deadline.  Coley delivered his personal account withdrawal slips to a case manager on July 1, 2004, for approval to cover the cost of postage for his appeal. (Respondent's Ex. 15, containing Aff. of Coley with Ex. B and Ex. 1)  He submitted his papers for his appeal to the Ohio Supreme Court (notice of appeal to the Ohio Supreme Court, motion to waive filing fee and memorandum in support of jurisdiction) to institutional mail room staff for mailing with his pre-approved account withdrawal slips on July 2, 2004, but the institutional mail room staff did not collect the mail from the mail room box and send over Coley's cash slips to the cashier's office until July 6, 2004. *Id*. His pre-approved personal account withdrawal slips were time-stamped as received by the prison business office on July 7, 2004. *Id.*  Coley had to submit his notice of appeal with application for *in forma pauperis* status on or before Friday, July 10, 2004.  This filing deadline was eight days from the time that the prison business office received the pre-approved cash withdrawal slips and papers for Coley's appeal to the Ohio Supreme Court.

The rule in such circumstances is that an external impediment to the defense excused the procedural default:

3:05 CV 0121                                                5

> Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, however, the [prison mailbox] rule is sufficient to excuse a procedural default based upon a late filing.[1] If the prison had accepted and mailed [a prisoner's] petition when he first attempted to deliver it – five days before the state's deadline – we have no doubt that it would have been timely delivered in the normal course of events.

*Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003).

The circuit court emphasized "normal course of events," and it is implicit that this rule presumes an element of "good faith" by the state authorities in both the creation and compliance with institutional mail procedures. State authorities could create situations where either the mailing procedures or a lack of compliance prevent timely filing in nearly all instances, which would be a "normal course of events." But such a *reductio ad absurdum* clearly was not the circuit court's intent. The rule must be tempered by reasonable diligence and promptness from the prison mail handlers, which did not occur in Coley's situation.

Coley has "cause" to excuse the procedural default of failing to timely appeal to the Ohio Supreme Court. Although he subsequently did apply for leave to file a delayed appeal, the Ohio Supreme Court's subsequent rejection of leave to file a delayed appeal did not negate the original "cause" for the procedural default. The prejudice resulting from the procedural default is that the Ohio Supreme Court refused to consider his Fifth Amendment claim. As in *Maples v. Stegall*,

---

[1] See *Houston Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)

3:05 CV 0121                                6

respondent does not contest that the procedural default was prejudicial.² Nonetheless, Coley cannot demonstrate "actual prejudice." where "the result of the proceeding would have been different." ³

Obviously, Coley had "cause" but prejudice is also necessary to demonstrate a favorable outcome to break through the barrier to federal review that exists due to the procedural default. See *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 2546 (1991); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2635, 2645-48, 91 L.Ed.2d 397 (1986). "Prejudice must be 'actual prejudice' as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *Bousley v. U.S.*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Murray v. Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646. Under the circumstances in order to determine whether there was "actionable prejudice" Coley's sole ground must be scrutinized to ascertain whether it has merit. The state appellate court addressed the assignment of error as follows:

---

² See *Id*., 340 F.3d at 439.

³ "The Supreme Court has declined to provide a general definition of "prejudice" for purposes of cause and prejudice. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nevertheless, the Court has given some instructive content to the term by explaining that one way to establish the prejudice component of cause and prejudice is to establish *Brady* materiality. *Banks v. Dretke*, 540 U.S. 668, 691, 698, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004); *Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Given that *Strickland* prejudice is governed by a standard worded similarly to the *Brady* materiality standard, compare *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (internal quotation marks omitted)), with *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."), it follows that establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice. *Mincey v. Head*, 206 F.3d 1106, 1147 n. 86 (11th Cir.2000), *cert. denied*, 532 U.S. 926, 121 S.Ct. 1369, 149 L.Ed.2d 297 (2001); *Prou v. United States*, 199 F.3d 37, 49 (1st Cir.1999).(footnote omitted)."

*Joseph v. Coyle,* 469 F.3d 441, 462 -463 (6ᵗʰ Cir.2006)

As to appellant's argument that the gun demonstration was violative of his Fifth Amendment privilege against self-incrimination, the United States Supreme Court has defined the privilege as "protect[ing] an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature * * *." *Schmerber v. California* (1966), 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908. " '[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a "witness" against himself.' " *Pennsylvania v. Muniz* (1990), 496 U.S. 582, 589, 110 S.Ct. 2638, 110 L.Ed.2d 528, quoting *Doe v. United States* (1988), 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184. In other words, "the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber*, 384 U.S. at 764.

*2 In Ohio, the demonstration of physical attributes such as scars, fingerprints, tattoos, eyes and teeth have been held to be nontestimonial. See *State v. Holbrook* (1976), 1st Dist. No. C-75110 (facial marks); *State v. Savage*, 10th Dist. No. 02AP-202, 2002-Ohio-6837 (hands); *State v. Ashford* (Dec. 11, 1986), 8th Dist. No. 51366 (fingerprints). Likewise, courts have consistently held that ordering a defendant to don certain clothing items worn by the perpetrator during the commission of a crime is nontestimonial. See State v. Daly (Feb. 16, 1983), 9th Dist. No. 3380 (hat and wig); *Bivens v. Indiana* (Ind.1982), 433 N.E.2d 387 (coat).

At the trial in the present case, just prior to the event in dispute, Rite Aid employee Janet Molik testified that the perpetrator had the gun laying flat in his hand and that it fit in the palm of his hand. Molik testified that she believed that the perpetrator "cocked" the gun. Molik then identified appellant as the perpetrator.

At the conclusion of Molik's testimony, the state moved to have the court order appellant to hold the weapon in the palm of his hand as described by Molik. Defense counsel objected arguing that the display would unfairly prejudice appellant. Overruling the objection, the court concluded that the gun display was demonstrative in the same vein as placing an article of clothing on appellant. Appellant then held out his right hand, palm facing up, and the gun was placed in his outstretched hand.

3:05 CV 0121                                                                                    8

> After careful review of the relevant portions of the record and the case law, we conclude that appellant's act of holding the gun in his outstretched palm was nontestimonial in nature. Appellant's act was a source of "real" or "physical" evidence in that it was a visual demonstration of prior testimony.

*Coley*, 2004 WL 1191100 at *1-*2.

At trial the prosecutor moved for the court to order Coley to hold the firearm in the palm of his hand explaining:
> The witness said that the firearm fit in the palm of Mr. Coley's hand. We would like the jury to have the opportunity to see that. It's our position that Mr. Coley had no constitutional right to refuse this because similar identificator issues, and we would not be asking him to testify as such.

(Trial Tr. at 335). The prosecutor stated that this would be similar to requesting the defendant to wear an article of clothing such as a ski mask, skirt or jacket and defense counsel argued that this action was unfairly prejudicial (*Id.*, at 335-36). Had Coley taken a timely appeal to the Ohio Supreme Court as originally anticipated, the outcome would not have been different. The state court decision correctly applied binding precedent from *Schmerber v. California*, 384 U.S. 357, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 268, 110 L.Ed.2d 528 (1990).

Coley challenges the state court ruling with a number of state cases that this constituted an abuse of discretion. However these state cases do not support his Fifth and Fourteenth Amendment arguments. Perhaps to put a more sensible spin on Coley's arguments, the Supreme Court has stated, "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his

3:05 CV 0121 9

conviction is found, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession . . ." *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908, 28 O.O.2d 177 (1964). Identifying physical characteristics of the human body are, however, outside the protection of the Fifth Amendment. See *Holt v. U.S.*, 218 U.S. 245, 252, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). In *Holt* the Supreme Court stated that a defendant could be required to put on a blouse which had been identified by an eyewitness explaining, ". . . the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *Id.* In summarizing the extent of the law governing non-testimonial acts, over a decade ago the Sixth Circuit explained:

> Considering the issue of an asserted fifth amendment violation, it is initially observed that fifth amendment proscriptions do not attach where the evidence is not "relat[ed] to some communicative act," *Schmerber v. California*, 384 U.S. 757, 765, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966) (blood sample), or of "testimonial or communicative content." *United States v. Dionisio*, 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d 67 (1973) (voice exemplar). The privilege attaches only to testimonial compulsion and not to demonstrative, "physical or real" evidence. See: *South Dakota v. Neville*, 459 U.S. 553, ----, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983) (evidence of refusal to submit to a blood-alcohol test does not offend fifth amendment right against self-incrimination); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (voice exemplar); *United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980) (Congress may give Internal Revenue Service power to require taxpayers to furnish handwriting examples); *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (handwriting exemplar); *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (defendant compelled to wear particular clothing).

*U.S. v. Williams*, 704 F.2d 315, 317 (6th Cir. 1983).

3:05 CV 0121                                                    10

Compelling Coley to demonstrate holding the firearm before the jury was not a testimonial act, and his ability to hold the firearm in the palm of his hand, as the witness had testified, is no different than compelling a defendant to put on a mask or a wig. See *Holt, supra*; *U.S. v. Satterfield*, 572 F.2d 687 (9th Cir. 1978); *U.S. v. Murray*, 523 F.2d 489 (8th Cir. 1975). Compelling Coley to make this demonstration did not require a "communicative act" in violation of his Fifth Amendment right to silence.

For the same reasons that Coley cannot show actual prejudice to excuse his procedural default precluding federal collateral review of his Fifth Amendment claim, he has not established that the state appellate court's decision was an adjudication that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," as required to grant a writ of habeas corpus under 28 U.S.C. §2254(d)(1). See *Hinkle v. Randle*, 271 F.3d 239, 247 (6th Cir. 2001).

### *CONCLUSION AND RECOMMENDATION*

Because federal review of petitioner's claim is barred by an unexcused procedural default in the state courts, it is recommended that the pending federal habeas corpus petition in this matter be dismissed. Petitioner has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a

3:05 CV 0121                                                            11

decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding. See 28 U.S.C. §2254(d)(1) and (2). Petitioner has not demonstrated any error resulting in denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. There has been no demonstrated need for an evidentiary hearing. It is recommended that petitioner's application for habeas corpus be denied.

s/James S. Gallas<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: December 18, 2007